**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

JASMIN CADAVID,                               CASE NO:

    Plaintiff,

v.

VIP LIFESTYLE LUXURY 1, LLC, and
JOHN LAYNAS, an individual,

    Defendant(s)
_____/

## COMPLAINT

Plaintiff, JASMIN CADAVID ("CADAVID" or "Plaintiff"), by and through the undersigned counsel does hereby sue Defendants, VIP LIFESTYLE LUXURY 1, LLC ("VIP"), and JOHN LAYNAS ("LAYNAS"), (collectively, the "DEFENDANTS"), pursuant to claims for breach of contract, fraud, violations of Florida's Civil Theft statute, and other violations of Florida state law, in order to recover damages she sustained due to the unlawful and unwarranted theft of her personal property.

In support thereof, Plaintiff states as follows:

### OVERVIEW

1. This is a suit for Breach of Contract, Fraud in the Inducement, Violations of Florida's Civil Theft Statute, and Conversion. In addition, and/or in the alternative, CADAVID seeks relief under a theory of Unjust Enrichment.

### THE PARTIES

2. CADAVID was at all times material hereto a resident of Clark County, Nevada.

3. VIP is a Florida limited liability company with a principal place of business in Miami-

Dade County. At all times material hereto, VIP was a resident of Miami-Dade County, Florida.

4. LAYNAS, on information and belief, was at all times material hereto a resident of Miami-Dade County, Florida. LAYNAS is the founder of VIP Lifestyle Luxury 1, LLC and at all times material hereto was a member of VIP Lifestyle Luxury 1, LLC.

## JURISDICTION AND VENUE

5. This is an action for monetary damages.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because the amount in controversy of this suit exceeds $75,000.00, exclusive of interests and costs, and it is between citizens of different states.

7. Venue is proper in this District pursuant to §1391, in that all of the Defendants are residents of the State of Florida, which is where this District is located.

8. Venue is also proper pursuant to §1391, in that a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this District.

## COMMON ALLEGATIONS

9. On or around June 6, 2016, CADAVID entered into a partnership agreement (the "Agreement") with LAYNAS and VIP where the parties agreed to share in the ownership of a Mercedes Benz Sprinter Van (the "Van").

10. The Agreement was provided to CADAVID by the DEFENDANTS via email while CADAVID was in Florida and the Agreement was executed by CADAVID in Florida.

11. LAYNAS, who at the time, on information and belief, was the sole member of VIP, executed the Agreement on behalf of VIP.

12. Prior to CADAVID's execution of the Agreement, the DEFENDANTS informed CADAVID that the DEFENDANTS had a full and complete ownership interest in the VAN.

13. Pursuant to the terms of the Agreement, CADAVID paid a total of Thirty Thousand ($30,000.00) dollars to LAYNAS and VIP through cash and wire transfers in exchange for a fifty percent (50%) ownership interest in the Van.

14. It was agreed amongst the parties that CADAVID would be given exclusive possession of the Van and CADAVID would be responsible for operating the Van in Las Vegas, Nevada ("Las Vegas"), where CADAVID was planning to open a luxury chauffeur service.

15. The parties further agreed that the profits from CADAVID's luxury chauffeur service would be split between them.

16. Originally, the Van was furnished by the DEFENDANTS to CADAVID for her use, and CADAVID used the Van in Las Vegas.

17. The Van, however, was seized by officials in Las Vegas, on or around August 25, 2016, after it received an administrative citation for, among other things, unlawful advertising.

18. Upon receiving the citation, CADAVID diligently worked to have the Van returned to her by Las Vegas officials, including spending sums on an attorney to help her to recover the Van. Cadavid, however, discovered that neither LAYNAS, nor VIP had actually perfected her ownership interest in the Van and thus her name was not listed as one of the Van's owners and CADAVID therefore could not retrieve the Van from the Las Vegas officials.

19. CADAVID also discovered that contrary to the representations that had been made by VIP and LAYNAS, the DEFENDANTS did not actually own the Van.  CADAVID discovered that the DEFENDANTS still owed money on the Van and thus, on information and belief, the Van's true owner was a financial institution as opposed to the DEFENDANTS.

20. Ultimately, LAYNAS secured the release of the Van from the Las Vegas officials.

21. However, rather than return the Van to CADAVID, who was supposed to possess the Van

pursuant to the terms of the Agreement, LAYNAS retained possession of the Van despite CADAVID's repeated requests that the Van be returned to her.

22. After it became clear to CADAVID that the DEFENDANTS would not return the Van to her, CADAVID sought the return of the Thirty Thousand ($30,000.00) dollars that she paid the DEFENDANTS in order to receive her fifty percent (50%) ownership interest in, and for control over, the Van.

23. On or around September 14, 2016, CADAVID served the DEFENDANTS with a formal written civil theft demand letter demanding the prompt return of either her money or the Van. *See* a true and correct copy of the "Demand Letter" attached hereto as Exhibit "**A**".

24. In either November or December 2016, LAYNAS personally guaranteed CADAVID that he would return her money to her in an order to avoid litigation.

25. This guarantee was memorialized in an agreement (the "Payment Agreement") in February 2017.  A true and correct copy of the "Payment Agreement" is attached hereto as Exhibit "**B**".

26. LAYNAS paid CADVID eight thousand ($8,000.00) dollars in February 2017; however, CADAVID has not received a single payment from either of the DEFENDANTS since then.

27. LAYNAS has also cut off any further communication with CADAVID and her attempts to further collect, or to even discuss the matter with LAYNAS have been met with no avail.

28. To date, CADAVID has neither possession of the Van; nor the monies that she used to acquire her ownership interest in the Van.

29. As a direct result of the DEFENDANTS' failure to return CADAVID's money to her, CADAVID has been damaged economically.

30. CADAVID has duly performed all of her duties and obligations under the Agreement

4

and she has previously demanded, in writing, payment of the money that she is owed from the DEFENDANTS.

31. Any conditions precedent to CADAVID bringing this action have occurred, have been performed, or else have been excused or waived.

32. CADAVID is entitled to a return of the money that she provided the DEFENDANTS.

33. CADAVID has retained the services of the undersigned attorney and she has agreed to pay a reasonable fee for the undersigned's legal services. The attorney's fees and the costs that CADAVID incurs as a result of bringing this action should be taxed against the DEFENDANTS due to their bad faith actions, pursuant to §772.11 Florida Statutes, and otherwise.

## COUNT I
## BREACH OF CONTRACT

34. Paragraphs 1 through 33 are incorporated as if set forth verbatim herein.

35. This is a count for Breach of Contract.

36. CADAVID and the DEFENDANTS entered into the Agreement on or around June 6, 2016.

37. The Agreement provided that CADAVID would pay the DEFENDANTS Thirty Thousand ($30,000.00) dollars in exchange for a fifty percent (50%) ownership interest in the Van and the ability to use and to operate the Van in Las Vegas.

38. CADAVID performed all of her obligations under the terms of the Agreement.

39. The actions of the DEFENDANTS have prevented CADAVID from utilizing the Van as was agreed by the parties.

40. Additionally, the DEFENDANTS have failed to return the payment that CADAVID made to the DEFENDANTS in order to acquire the Van after they failed to return the Van to her.

41. As a direct and proximate result of the DEFENDANTS' breaches of the Agreement,

CADAVID has been left without the possession or the use of the Van, and without the money that she paid for the Van.

42. CADAVID has incurred damages and is entitled to recover the amount that is owed to her as a result of the DEFENDANTS' breaches.  CADAVID is also entitled to prejudgment interest to compensate her for the loss of her use of the money that she paid the DEFENDANTS, plus additional damages that shall be determined at trial.

## COUNT II
## FRAUD IN THE INDUCEMENT

43. Paragraphs 1 through 33 are incorporated as if set forth verbatim herein.

44. This is a count for Fraud in the Inducement.

45. While CADAVID was discussing entering into a business venture with the DEFENDANTS, the DEFENDANTS informed CADAVID that they owned the Van "free and clear" and that they "had a full and complete ownership interest in the VAN," which they could convey to her.

46. The DEFENDANTS knew or should have known that this statement was false at the time it was made to CADAVID because they were/are in privity with whatever financial institution possesses, or possessed, the true ownership of the Van.

47. The DEFENDANTS falsely represented their ownership interest in the Van to CADAVID in the hopes that such representations would induce CADAVID to rely upon the DEFENDANTS' representations and to enter into the Agreement.

48. CADAVID did in fact rely upon the DEFENDANTS' representations and she was induced and ultimately did enter into the Agreement with the DEFENDANTS on or around June 6, 2016.

49. As a direct and proximate result of CADAVID's justifiable reliance on the

DEFENDANTS' representations that they "had a full and complete ownership interest in the VAN," CADAVID suffered injuries and damages, including being deprived of her possession and her use of the Van, and being deprived of her money, which she provided to the DEFENDANTS in exchange for her possession and use of the Van.

50. CADAVID is currently without the Van or her money due to the fraudulent representations of the DEFENDANTS, which were made in order to induce her to enter into the Agreement.

### COUNT III
### VIOLATIONS OF FLORIDA'S CIVIL THEFT STATUTE
### (FLA. STAT. §772.11)

51. Paragraphs 1 through 33 are incorporated as if set forth verbatim herein.

52. Fla. Stat. § 812.04 ("Theft") provides in pertinent part:

> *(1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:*
>
> > *a. Deprive the other person of a right to the property or a benefit from the property.*
> >
> > *b. Appropriate the property to his or her own use or use of any person not entitled to the use of the property.*

53. Fla. Stat. § 772.11 ("Civil Remedy for theft or exploitation") provides, in pertinent part:

> *(1) Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts. Before filing an action for damages under this section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section.  If the person to whom a written demand is made complies with such demand within 30 days after receipt of the demand, that person shall be given a written release from further civil liability for the specific act of theft or exploitation by the person making the written demand.*

54. As set forth above, CADAVID has been injured by the DEFENDANTS' violation of Fla.

7

Stat. § 812.014, *et seq.*

55. The DEFENDANTS knowingly and intentionally obtained or used, or endeavored to obtain or use, CADAVID's property (the Van and/or her money) with the intent to either temporarily or permanently deprive CADAVID of her right to benefit from the property and they appropriated the property for their own use, or the use of another who was not entitled to the property.

56. On or around September 14, 2016, CADAVID served the DEFENDANTS with a formal written demand letter demanding the prompt return of either her money or the Van. *See* Exhibit "**A**".

57. As of the date of the filing of this lawsuit, which has been well over thirty (30) days after the date that the last written demand was served on the DEFENDANTS, CADAVID's demands for either the return of her money, or the Van have still gone unfulfilled.

58. The DEFENDANTS have failed to return CADAVID's money to her, and they have failed to return the Van to her, or to allow CADAVID to operate and to use the Van as was provided in the terms of the Agreement.

59. CADAVID provided the DEFENDANTS with money in exchange for her ownership interest in the Van, and she is therefore entitled to use and to operate the Van or she is entitled to the return of her Thirty Thousand ($30,000.00) dollars.

60. As a direct and proximate result of the DEFENDANTS' actions, CADAVID has suffered economic damage.

61. Pursuant to Fla. Stat. § 772.11, CADAVID is entitled to recover from the DEFENDANTS three times the current monetary value in compensatory damages for which the DEFENDANTS would otherwise be liable, or Ninety Thousand ($90,000.00) dollars.

62. As of today's date, CADAVID has received neither her money, nor the Van.

63. The DEFENDANTS have direct and personal knowledge of CADAVID's claims but they have chosen to ignore them thus far.

64. Pursuant to Fla. Stat. § 772.11, CADAVID is entitled to recover from the DEFENDANTS the reasonable amount of her attorneys' fees and the costs that she has incurred in pursuing her interests in this matter.

## COUNT IV
## CONVERSION

65. Paragraphs 1 through 33 are incorporated as if set forth verbatim herein.

66. This is a count for Conversion.

67. CADAVID provided the DEFENDANTS with Thirty Thousand ($30,000.00) dollars in exchange for a fifty percent (50%) ownership interest in the Van and for the ability to use and to operate the Van in Las Vegas.

68. CADAVID paid the DEFENDANTS for the Van on or about June 6, 2016, however, she is and has been without possession of the Van for nearly four (4) years now and she has been precluded from being able to use or to operate the Van during this time.

69. In addition to preventing CADAVID from using and/or operating the Van, the DEFENDANTS have also failed to return CADAVID's money to her, despite CADAVID'S request for its return.

70. The DEFENDANTS' retention of the Van and CADAVID's payment is inconsistent with CADAVID's right to possession of the Van and/or her right to the return of her money.

71. In addition to several texts and telephonic demands that were made to the DEFENDANTS

by CADAVID, on or around September 14, 2016, CADAVID sent a formal written demand letter to the DEFENDANTS in which she demanded either the return of the Van or her money. *See* Exhibit "**A**".

72. LAYNAS eventually confirmed receipt of the demand letter and he personally guaranteed that he would make sure CADAVID's money was refunded to her. *See* Exhibit "**B**".

73. As of today's date, neither CADAVID's money, nor the Van have been returned to her.

## COUNT V
## UNJUST ENRICHMENT

74. Paragraphs 1 through 33 are incorporated as if set forth verbatim herein.

75. This is a count for Unjust Enrichment.

76. On or about June 6, 2016, CADAVID paid the DEFENDANTS Thirty Thousand ($30,000.00) dollars in exchange for a fifty percent (50%) ownership interest in the Van.

77. CADAVID paid the DEFENDANTS through cash and wire payments.

78. CADAVID also paid the money to the DEFENDANTS in exchange for the ability to use and to operate the Van in Las Vegas.

79. By providing money to the DEFENDANTS, CADAVID conferred a benefit upon them.

80. The DEFENDANTS are aware of, and had knowledge of, the benefit they received from CADAVID when she provided the money to them.

81. The DEFENDANTS accepted the payments voluntarily and knowingly; however, CADAVID is currently without access to the Van and she no longer has the ability to use or to operate the Van in Las Vegas or elsewhere.

82. CADAVID is also without the money she spent in order to acquire her interest in the Van.

83. The circumstances are such that it would be inequitable for the DEFENDANTS to retain

the benefit that was conferred on them by CADAVID, without providing any benefit to CADAVID as agreed in the Agreement.

**WHEREFORE,** for the reasons set forth herein, CADAVID requests that this Court award compensatory damages, including but not limited to, the amount that CADAVID paid for her interest in the Van; an amount equal to the amount she paid for her interest in the Van as liquidated damages; prejudgment and post judgment interest; and attorney's fees and costs in her favor and against the DEFENDANTS due to their breaches of the Agreement, their fraudulent actions, and their violations of Florida statutes and laws, in addition to such further relief as this Court deems to be just and proper.

## DEMAND FOR JURY TRIAL

**WHEREFORE**, CADAVID demands a trial by jury for all issues so triable.

## RESERVATION OF RIGHTS

CADAVID reserves the right to further amend this Complaint, upon completion of her investigation and discovery, in order to assert any additional claims for relief against the DEFENDANTS or any other parties as may be warranted under the circumstances and as allowed by law. CADAVID further reserves the right to seek and to have punitive damages assessed against the DEFENDANTS.

Dated: June 4, 2020                              s/Andrew Williams

        THE WILLIAMS LAW GROUP
        Andrew Williams
        *Attorney for Plaintiff*
        6273 Sunset Drive, Suite D3
        South Miami, Florida 33143
        Telephone:  (253) 970-1683
        FL Bar No. 0111817
        Email:  Andrew@TheWilliamsLG.com
        Secondary Email: WilliamsLawFlorida@gmail.com